UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAY NUSSBAUM, Individually and as Personal Representative of the Estate of PATRICIA NUSSBAUM, Deceased )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CVS CAREMARK CORPORATION, )<br>*et al.* )<br>)<br>Defendants. )<br>_____ ) | No. 1:10-cv-1198 (AJT/IDD) |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion") [Doc. No. 15] under Fed. R. Civ. P. 12(b)(2). Upon consideration of the Motion, the memoranda and exhibits in support thereof and opposition thereto, and the arguments of counsel at the hearing held on January 7, 2011, the Court finds that Plaintiff Jay Nussbaum has made a *prima facie* showing that this Court has personal jurisdiction over Defendants Carlos E. Picone, M.D. and Drs. Langevin, Larsen, Hamm & Cohen, P.C., t/a Chevy Chase Pulmonary Associates ("Chevy Chase"). The Motion is therefore denied without prejudice, subject to final adjudication.

## I. BACKGROUND

This action follows the tragic death of Patricia Nussbaum, Plaintiff's wife who died on March 6, 2009. In his Amended Complaint, filed on November 8, 2010, Plaintiff alleges that Dr. Picone, and/or his agents, and Chevy Chase prescribed the drug Bactrim

1

DS to Mrs. Nussbaum when they knew or should have known that she was also taking the blood thinner Coumadin, and that Bactrim was contra-indicated for use with Coumadin. Plaintiff claims that the interaction of the drugs caused Mrs. Nussbaum's death, and has asserted claims for wrongful death and a survivor action. Plaintiff also avers that "Chevy Chase ... and its agents and employees rendered medical advice to Mrs. Nussbaum while [she] was on the telephone, physically located in Virginia." Am. Compl., ¶ 11.

On December 6, 2010, Dr. Picone and Chevy Chase filed the Motion, along with affidavits from Dr. Picone and Peter G. Hamm, M.D., a principal of Chevy Chase. On December 16, 2010, Plaintiff filed his opposition, along with an affidavit and certain documentary exhibits. On December 22, 2010, Dr. Picone and Chevy Chase filed a response and a second affidavit from Dr. Picone. On January 7, 2011, this Court held a hearing on the Motion, following which it took the matter under advisement.

## II.    RELEVANT FACTS

The relevant facts presently before the Court appear as follows:

Plaintiff was and is a resident of Virginia. Mrs. Nussbaum was a resident of Virginia during all relevant times before her death. Chevy Chase is a Maryland corporation with its principal place of business in Maryland. Dr. Picone resides in Maryland, practices medicine in Maryland and the District of Columbia, and is licensed to practice medicine in Virginia. *See* Picone Aff. I, ¶ 2 [Doc. No. 15-1].

Dr. Picone first saw Mrs. Nussbaum at the request of her allergist on July 15, 2008, after she had been hospitalized for an asthma attack at Sibley Memorial Hospital in Washington D.C. Picone Aff. I, ¶ 6, [Doc. No. 15-1]; Pltf.'s Mem., Ex. 3 [Doc. No. 18-

2

3]. Following that hospitalization, Dr. Picone saw Mrs. Nussbaum on several occasions at his office at Chevy Chase in Maryland for asthma. Picone Aff. I, ¶ 6 [Doc. No. 15-1]. More specifically, on July 23, 2008, Dr. Picone examined Mrs. Nussbaum and formed the impression of "moderate-to-severe asthma, aspirin sensitivity, nasal polyposis, and recent admission and hospitalization with asthma exacerbation related to acute URI [upper respiratory infection]." Pltf.'s Mem., Ex. 3 [Doc. No. 18-3]. It appears from the record before the Court that at the time, she continued to be also under the care of a primary physician and also an allergist. *See* Id. Following his examination, Dr. Picone recommended a course of drug therapies, including Zyflo and Xolair, and certain testing in consultation with her allergist, with a follow up visit within three to four weeks after she returned from vacation in order to "discuss at that point with [her allergist]." Id.

On August 18, 2008, Mrs. Nussbaum returned to Dr. Picone's Maryland office, at which time he administered the drug Xolair and also prescribed an "Epi-pen," which is an auto-injector used for the treatment of acute allergic reactions or to avoid or treat the onset of anaphylactic shock. Id.; *see also* Picone Aff., II, ¶ 2 [Doc. No. 19-1].

On October 23, 2008, Dr. Picone saw Mrs. Nussbaum for what is described as a "check-up." On October 24, 2008, and on November 3, 2008, Mrs. Nussbaum was seen by Dr. Picone in his Maryland office for "follow-up." On both occasions, she was noted to be "doing quite well" and Dr. Picone's plan was to continue her medications and have her "follow with [her allergist and primary physician]." Id. In that regard, on November 3, 2008, Dr. Picone noted that Mrs. Nussbaum "was initiated on Zyflo and Xolair with excellent response and failed to follow up for Xolair injection for the past month and a

3

half. Here for repeat injection. No need to be seen by MD in the future unless problems develop." Id.

On November 14, 2008, Mrs. Nussbaum called Dr. Picone's office indicating that she was not sick but was going to Dallas for the weekend and wanted to fill a prescription for Prednisone in the event that she became sick while traveling. In response to this request, a prescription for Prednisone was called in to a Virginia pharmacy. According to Dr. Picone, "I do not know if this prescription was filled. The prescription was not based on upon any diagnosis made over the telephone, but rather based upon my physical examination of Mrs. Nussbaum in my Maryland office." Picone Aff. II, ¶ 3 [Doc. No. 19-1].

On February 27, 2009, Mrs. Nussbaum returned to Dr. Picone at his Maryland office for another follow up visit without any particular change in her condition or treatment plan and Dr. Picone again noted that the plan was for Mrs. Nussbaum to follow up with her allergist and primary physician. Pltf.'s Mem., Ex. 3 [Doc. No. 18-3].

According to Dr. Picone, on March 2, 2009, Mrs. Nussbaum, "concerned because she knew that a sinus infection could precipitate an asthma exacerbation," called his office and left a message that she had a sinus infection going to her chest and requested an antibiotic and cough syrup. Picone Aff. II, ¶ 4 [Doc. No. 19-1]. In response to Mrs. Nussbaum's call, Dr. Picone's office prescribed the drug Bactrim to Mrs. Nussbaum, and called in the prescription to the Virginia pharmacy. Based on the current record before the Court, including the parties' representations, it is not entirely clear how Bactrim came to be prescribed, i.e., whether Dr. Picone was involved in the decision personally, or whether a nurse practitioner practicing through Chevy Chase issued the prescription of

her own volition under Dr. Picone's name. It is also not clear whether Dr. Picone and Mrs. Nussbaum actually spoke over the telephone before and in connection with the prescription for Bactrim. It is undisputed, however, that the March 2, 2009, prescription for Bactrim was the first time that Bactrim was prescribed to Mrs. Nussbaum and that the drug was prescribed under Dr. Picone's name.[1]

In response to the prescription, the Virginia pharmacy dispensed the drug Bactrim to Mrs. Nussbaum. Am. Compl., ¶ 14. At the time, she was taking the blood thinner Coumadin, which is contraindicated for use with Bactrim. Am. Compl., ¶ 15. According to the Plaintiff, taking these two medications in tandem caused Mrs. Nussbaum's death shortly thereafter on March 6, 2009. Am. Compl.,¶ 18-19. For the limited purposes of this Motion, there does not appear to be any dispute that Mrs. Nussbaum took the medication, or that the prescription was at least a partial cause of Mrs. Nussbaum's injury.

During oral argument, the parties represented to the Court that a census of Chevy Chase's patents revealed that approximately 1,600 patients provided Chevy Chase with addresses with Virginia zip codes. According to Chevy Chase, this figure represents approximately 9.5% of Chevy Chase's patient roster.

---

[1] Plaintiff has submitted an affidavit in which he related the events surrounding the prescription of Bactrim as follows:

> On March 2, 2009, Dr. Carlos Picone had a telephone conversation with my wife, Patricia Nussbaum, while she was at our home in Great Falls, Virginia. After the conversation, Patricia stated to me that Dr. Picone told her that she had an upper respiratory infection, and that he was ordering a prescription antibiotic medication for her at the CVS pharmacy in Virginia near our home.

Nussbaum Aff., ¶ 1 [Doc. No. 18-10]. The Court finds it unnecessary at this point to address any issues concerning the admissibility at trial of such testimony.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks personal jurisdiction. Generally, the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) ("When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion ... the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence"). If, however, as is the case here, the court decides the jurisdictional question based solely on the motion papers, supporting legal memoranda, and the relevant allegations of the complaint, as opposed to through an evidentiary hearing, the plaintiff need only prove at this point a *prima facie* case of personal jurisdiction in order to allow the case to proceed. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). In deciding whether the plaintiff has proved a *prima facie* case, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676; *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 Fed. Appx. 889, 890 (4th Cir. 2007).

## IV. ANALYSIS

To determine whether personal jurisdiction over a non-resident defendant exists, the Court must engage in a two-part inquiry. First, the Court must determine whether Virginia law authorizes jurisdiction. Next, the Court must decide whether the defendant has "certain minimum contacts with [Virginia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," so that personal

jurisdiction over the non-resident defendant comports with the *Due Process Clause* of the Fourteenth Amendment to the United States Constitution. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1984).[2]

### A. Application of Virginia's Long Arm Statute

The Court finds that Plaintiff has made a *prima facie* case for personal jurisdiction over Dr. Picone and Chevy Chase under both subsections (A)(1) and (A)(4) of Virginia's long arm statute, Va. Code § 8.01-328.1.

Under Va. Code § 8.01-328.1(A)(1), the Virginia courts "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... Transacting any business in this Commonwealth." Under this provision, "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts." *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990) (explaining rule stems from the fact that "the purpose of the Virginia long-arm statute is

---

[2] Virginia's long arm statute has been construed to extend personal jurisdiction to the full extent permitted by the *Due Process Clause*, and it has been generally stated that, as a result, the "statutory and constitutional inquiries coalesce into the question of whether [the defendants] had sufficient minimum contacts with Virginia to satisfy due process requirements." *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). This rule has been recited on numerous occasions. *See, e.g., Consulting Eng'rs Corp.*, 561 F.3d at 277 ("Because Virginia's long-arm statute is intended to extend personal jurisdiction to the full extent permissible under the *due process clause*, the statutory inquiry merges with the constitutional inquiry") (italics original); *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) ("Because Virginia's long arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause ... the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one") (internal punctuation omitted). The merger rule is not, however, applicable in all contexts, and does not apply to cases involving tortious acts committed outside Virginia that cause injury in Virginia. *See First Am. First., Inc. v. National Assoc. of Bank of Women*, 802 F.2d 1511, 1517 (4th Cir. 1986) (explaining that Va. Code § 8.01-328.1(a)(4) requires a measure of "'bolstering activities' to support the exercise of jurisdiction in respect of a claim arising from out-of-state causing in-in state injury" which "may exceed [the requirements] imposed by the due process clause"). As a result, the Court will engage in the full two-stage inquiry.

to extend jurisdiction to the extent permissible under the due process clause"); *see also Danville Plywood Corp.*, 238 S.E.2d. 800, 802 (Va. 1977). Both parties do not have to be physically present in Virginia to conduct business in Virginia. *See Metzger*, 901 F.2d at 39 (finding personal jurisdiction where out of state attorney retained co-counsel in Virginia, and corresponded via telephone and mail in connection with the retention); *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982) (contract modification that was addressed to and received in Virginia, telephonic negotiations that included at least one participant located in Virginia, and written communications sent to and received by recipients in Virginia constituted transacting business in Virginia).

In this case, there does not appear to be any dispute that an agent of Chevy Chase received Mrs. Nussbaum's request for medical assistance, made the medical judgment that it would be appropriate to prescribe a new medication, Bactrim, to Mrs. Nussbaum, caused a prescription to be transmitted to a pharmacy in Virginia under Dr. Picone's name, and that Mrs. Nussbaum's death arises out of this allegedly improper prescription and is the basis for the causes of action that Plaintiff asserts against Dr. Picone and Chevy Chase. Am. Compl., ¶¶ 10, 13-15, 17-19; *see also* Picone Aff. II, ¶¶ 4 [Doc. No. 19-1, at 2] ("My office called in a prescription for cough syrup and Bactrim to plaintiff's pharmacy"); Pltfs' Mem., Ex. 4 [Doc. No. 18-4] (listing Dr. Picone as the prescriber). The Court finds this proffered evidence sufficient to establish a *prima facie* case that these defendants "transacted business" in Virginia and that Plaintiff's causes of action arise out of that transaction of business.

With respect to personal jurisdiction established under Subsection (A)(4) of Virginia's long arm statute, Dr. Picone and Chevy Chase do not dispute that under Plaintiff's allegations, they engaged in tortious conduct outside of Virginia that caused injuries in Virginia. Nevertheless, they contest that they have engaged in sufficient Virginia connected activities to bring them within that statute, either under its terms, or for the purposes of satisfying constitutional *Due Process* requirements.

Under Va. Code § 8.01-328.1(a)(4), personal jurisdiction exists over an out-of-state defendant based on tortious acts committed outside Virginia that cause injury in Virginia if the defendant: (1) regularly conducts or solicits business in Virginia; (2) engages in any other persistent course of conduct in Virginia; or (3) derives substantial revenue from goods used, goods consumed or services rendered in Virginia. *Id.* The present record does not establish a *prima facie* showing that Chevy Chase and Dr. Picone regularly conduct or solicit business in Virginia, or derive substantial revenues from services rendered in Virginia. As a result, the inquiry turns on whether sufficient evidence exists as to whether Dr. Picone and Chevy Chase engage in a persistent course of conduct in Virginia.

"[T]o qualify as a persistent course of conduct, contacts must be ongoing or continuous in nature, but need not be related to the matter in suit." *Colt. Def. LLC. v. Heckler & Koch. Def., Inc.*, Case No. 2:04-cv-258, 2004 U.S. Dist. LEXIS 28690, at * 43 (E.D. Va. Oct. 22, 2004). The persistent conduct required by the statute does not have to rise to the level of "continuous and systematic" contacts that would support the exercise of general personal jurisdiction, but rather, requires "some measure of 'bolstering activities'" that may exceed the specific jurisdiction requirements of the *Due Process*

*Clause. First Am. First, Inc.*, 802 F.2d at 1517, fn. 3. This approach recognizes that "Virginia has a legitimate interest in providing a forum for claims based on conduct causing harm within its borders" and that "an out of state defendant should reasonably expect to appear before a Virginia court when his 'purposefully targeted conduct' has caused harm in Virginia." *Robinson v. Egnor*, 699 F. Supp. 1207, 1213-14 (E.D. Va. 1988). The requirement may be satisfied if a medical professional provides medical services to patients in Virginia, even though the medical professional is not physically present in Virginia. *See e.g. Pierce v. First Healthcare Corp.*, 43 Va. Cir. 479 (Va. Cir. Ct. 1997) (holding that South Carolina physician's provision of diagnoses to patients in Virginia rose to the level of a persistent course of conduct within the meaning of Va. Code § 8.01-328.1(A)(4)).

For the reasons discussed in the following section, the Court finds that the Plaintiff has made a *prima facie* case that Dr. Picone and Chevy Chase engaged in a persistent course of conduct sufficient to establish not only constitutionally sufficient minimum contacts with Virginia but also sufficient to satisfy the "bolstering activities" requirement of Va. Code § 8.01-328.1(A)(4).[3]

### B.     Due Process Analysis

At its core, the *Due Process* analysis hinges on whether "the defendant's conduct and connection with the State are such that he should reasonably anticipate being haled into court there." *Verizon Online Servs. v. Ralsky*, 203 F. Supp. 2d 601, 612 (E.D. Va.

---

[3] This Court declines to find that Va. Code § 8.01-328.1(A)(3), which confers personal jurisdiction based on "tortious injury by an act or omission in this Commonwealth," applies in this case. Rather, "the use of a telephone to facilitate transactions between remote locations serves as an alternative to presence," and concluding that telephonic communications that are directed to the forum state "establish[] presence in a state would upset generally held expectations." *See Stover v. O'Connell Assocs.*, 84 F.3d 132, 135 (4th Cir. 1996) (applying Maryland's analogue to Va. Code. § 8.01-328.1(A)(3), Md. CTS. & JUD. PROC. Code § 6-103(b)(3)).

2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). While this issue may be approached through the framework of general or specific personal jurisdiction, Plaintiff concedes that general personal jurisdiction does not exist in this case, and the Court will focus on the question of specific personal jurisdiction.

Specific personal jurisdiction exists when a defendant "purposefully direct[s] his activities at the residents of the forum" and the plaintiff's causes of action "arise out of" those activities. *Burger King*, 471 U.S. at 472. Under Fourth Circuit law, in determining whether specific jurisdiction should be asserted, a court should consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278.

"The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection to the forum State." *Ralsky*, 203 F. Supp. 2d at 612 (emphasis original, internal punctuation omitted). "Generally, '[m]ere telephonic, facsimile and written communications in furtherance of a transaction are not sufficient contacts to form a basis for personal jurisdiction.'" *Rosario v. Wands*, Case No. 1:09-cv-663, 2009 U.S. Dist. LEXIS 84992, at * 12 (E.D. Va. Sept. 17, 2009); *Superfos Investments v. FirstMiss Fertilizer*, 774 F. Supp. 393, 397-98 (E.D. Va. 1991). However, physical presence in the forum state is not required, *Pittsburg Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 526 (4th Cir. 1987), and the key question is whether defendant "directed his activities at Virginia 'in more than a random, fortuitous, or attenuated way." *Rosario*,

11

2009 U.S. Dist. LEXIS 84992, at * 13; *Allen v. James*, 381 F. Supp. 2d 495, 497 (E.D. Va. 2005).

When the Court conducts this analysis, it must focus on "the quality and nature" of the defendant's contacts with the forum state, and may not "merely ... count the contacts and quantitatively compare this case to other preceding cases." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that singe contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." *Id.*

In this case, the Court finds sufficient evidence, when construed most favorably to the Plaintiff, that Dr. Picone and Chevy Chase have intentionally directed their activities at Virginia. Dr. Picone has complied with Virginia's biennial license renewal requirements, and the Court finds that maintaining this license is a substantial contact that, if not in and of itself sufficient to confer personal jurisdiction over Dr. Picone and his practice through Chevy Chase, shows Dr. Picone's intention to continue to direct at least portions of his professional efforts towards patients in Virginia. *See* Va. Code § 54.1-2904(C) ("Any person practicing medicine ... during the time his license has lapsed shall be considered an illegal practitioner and shall be subject to the penalties for violation of this chapter"). The currency of Dr. Picone's Virginia medical license and the continuing effort required to maintain that license, rather than let it lapse, demonstrate to some degree a conscious decision on Dr. Picone's part to direct his activities to Virginia and obtain benefits and privileges under Virginia law. While the Court recognizes that some courts have viewed medical licensure by itself insufficient to subject a physician to

the jurisdiction of that state's courts, the Court finds little reason not to subject a physician who is subject to professional discipline in this state to personal jurisdiction with respect to claims arising out of his medical treatment of patients located in this state and whose treatment has some connection with or consequence in the state.

Further, while Dr. Picone and Chevy Chase downplay the nature of their contact with Mrs. Nussbaum in issuing the Bactrim prescription, the Court finds that the nature and quality of this contact is substantial. Dr. Picone admits that he provided "care and treatment to ... [Mrs.] Nussbaum" via telephone while she was located in Virginia, Picone Aff. II, ¶ 6 [Doc. No. 19-1], and the record before the Court indicates that the March 2, 2009, prescription was the first instance in which Dr. Picone or Chevy Chase prescribed Bactrim to Mrs. Nussbaum. The Court recognizes that that the record is not entirely clear whether Dr. Picone, or a nurse practitioner, made the medical judgment that Bactrim was an appropriate drug for Mrs. Nussbaum, but the prescription was issued under Dr. Picone's name, the decision required a substantial medical decision, and his medical judgment was directed at a known patient in Virginia, Mrs. Nussbaum.

The Court also recognizes that several cases have found significant for the purposes of determining personal jurisdiction *vel non* that the treatment provided in the forum state was simply follow up treatment initiated by the patient in the physician's home state. *See, e.g., Sanders v. Buch*, 938 F. Supp. 532 (W.D. Ark. 1996) (concluding no personal jurisdiction existed where patient was provided treatment pursuant to out-of-state physician's orders); *Boyd v. Green*, 496 F. Supp. 2d 691 (W.D. Va. 2007) (concluding that Tennessee physician could not be sued in Virginia based on prescriptions called in to the state as a component of the treatment performed in the

doctor's out of state office); *Wolf*, 745 F.2d at 904 (Georgia hospital not subject to personal jurisdiction in South Carolina as result of treating South Carolina resident); *Clark v. Remark*, Case No. 92-1682, 1993 U.S. App. LEXIS 10043, at * 8-11 (4th Cir. Apr. 29, 1993) (explaining that single communication between doctor in Florida and patient in Virginia, which was solicited by the patient, was not sufficient to confer personal jurisdiction). In light of these cases, the Court does note that, according to Dr. Picone, the Bactrim prescription was made in response to a voicemail message containing a self-diagnosis by Mrs. Nussbaum and a request for prescription drugs. *See* Picone Aff. II, ¶ 4 [Doc. No. 19-1, at 2]. Likewise, based on the present record, the relationship between the Bactrim prescription and the medical issues for which she had previously seen Dr. Picone is not entirely clear. At this stage, however, viewing the presented facts in the light most favorable to Plaintiff, *Brooks*, 242 Fed. Appx. at 890, and the entire course of conduct between the parties, this Court cannot find that the contacts in Virginia with Mrs. Nussbaum were simply random or fortuitous, or the result of unilateral conduct by a single patient. Rather, the Court finds that there are sufficient connections to Virginia to sustain personal jurisdiction for the claims asserted, particularly in light of the extent to which activities that reached into Virginia were part of Dr. Picone's relationship with Mrs. Nussbaum,[4] and the significant extent to which Virginia residents are implicated in Chevy Chase's practice.[5] *See Pierce*, 43 Va. Cir. at 480 ("[r]endering over

---

[4] The record before the Court also indicates that at least eleven (11) prescriptions issued by Dr. Picone reached CVS Pharmacy #1377 in Great Falls, Virginia, between July 2008 and March 2, 2009. [Doc. No. 18-2.]

[5] The Court notes that as a consequence of the close geographic proximity of Dr. Picone and Chevy Chase's practice in Maryland, and this Court's location in Virginia, Dr. Picone and Chevy Chase would, in any event, be subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(1)(B) were third party claims asserted against Dr. Picone and Chevy Chase under Fed. R. Civ. P. 14.

14

twenty diagnoses to Virginia patients in a period of less than four months is … a persistent course of conduct in Virginia") (internal punctuation omitted). Relatedly, the Court has also considered Virginia's strong interest in controlling and addressing the ill-effects and risks that result from the dispensation of drugs by physicians located outside the state. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (finding personal jurisdiction over California physician, and explaining "Texas has a strong interest in protecting its citizens from allegedly harmful experimental drugs, dispensed by those not licensed to practice within the state."). While there is no evidence before the Court that Bactrim or the other drugs prescribed to Mrs. Nussbaum were experimental, the drugs at issue in this case, if not administered properly, can, no doubt, cause severe consequences in the state.

## V. CONCLUSION

Based on the record before this Court, the Court finds Plaintiff has established a *prima facie* case that this Court has personal jurisdiction over Dr. Picone and Chevy Chase. For these reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 15] is DENIED. An appropriate Order will follow.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
January 21, 2011